UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JOEL KOSTYO, | ) | CASE NO. 1:09 CV 2509 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| DR. P. HARVEY, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

Pro se plaintiff Joel Kostyo filed this Bivens[1] action against Elkton Federal Correctional Institution ("FCI Elkton") Clinical Director P. Harvey, M.D., Bureau of Prisons ("BOP") Regional Medical Director John Manetti, FCI Elkton Physician's Assistant ("PA") R. Meece, FCI Elkton PA J. Bunts, FCI Elkton PA Wayne Flatt, and FCI Elkton Warden J.T. Shartle. He also includes a claim under the Federal Torts Claim Act, 28 U.S.C. § 1346 and § 2671. In the complaint, plaintiff alleges that necessary medical procedures were delayed, causing him additional injury. He seeks unspecified monetary damages.

**Background**

Mr. Kostyo was transferred to FCI Elkton on May 3, 2006. He claims that there was no bed available for him at that time and he was temporarily housed in the Special Housing Unit

---

[1] Bivens v. Six Unknown Agents, 403 U.S. 383 (1971).

("SHU").  Soon after his arrival, he was being handcuffed by one of the officers.  He claims the handcuffs were designed for a smaller person.  To secure his hands, the officers hyper-extended his arms backwards.  Mr. Kostyo contends he heard a pop and felt significant pain in his left shoulder.

Mr. Kostyo first reported to sick call for the shoulder pain on June 1, 2006.  He described the incident in the SHU and the resulting injury.  He was given exercises to do to strengthen his shoulder.  He continued to complain of shoulder pain in July and August 2006.  He was prescribed Motrin for the pain, and x-rays were ordered.  The x-rays showed no damage.  He sent a communication to Mr. Harvey, the FCI Elkton Clinical Director.  He indicated he was still in pain and the medication was not resolving the problem.  Mr. Harvey advised him to continue to perform the exercises.  Mr. Kostyo claims the exercises exacerbated the problem, and decided to discontinue that course of treatment.

In March 2007, Mr. Kostyo returned to the medical department complaining of pain in his left shoulder.  The physician's assistant gave him an injection of Toradol and placed a request for an MRI with the Utilization Review Committee ("URC").  The URC denied the request and ordered that a second set of x-rays be taken of Mr. Kostyo's shoulder.  These x-rays were also negative.  The MRI was then performed in May 2007.  The MRI revealed an abnormal amount of fluid or swelling was present in the shoulder joint, a small amount of fluid extended into the space between the shoulder blade and the tendon, and arthritis appeared in the shoulder joint where the scapula and the clavicle meet.  A small tear was suspected in the supraspinatus tendon. Upon receiving a copy of the MRI results, Mr. Kostyo asked Mr. Harvey about his options for treatment.  Mr. Harvey told him Motrin was the only option available as the x-rays were negative.  He did not mention the MRI results.

Mr. Kostyo returned to the medical department in July 2007 and was seen by physician's assistant Flatt. He indicates he was prescribed Proxicam in place of the Motrin. Mr. Kostyo inquired about possible surgery on his shoulder. He states Mr. Flatt replied that he had never seen rotator cuff surgery that achieved the result the patient expected. He stated that surgery was not always the answer and that Mr. Kostyo should give the medication time to work.

Nevertheless, Mr. Kostyo received approval from the URC to consult with an orthopedic surgeon . He met with Dr. Jurenovich on October 5, 2007. He claims the surgeon told him he had a rotator cuff tear which he felt would require surgery. The surgeon submitted several requests for approval of the procedure, but all requests were denied. The URC indicated that surgery was not clinically indicated.

When the third request was denied in 2008, Health Services Administrator J. Bunts met with Mr. Kostyo. He explained that the surgery requests were denied because the injury was not life threatening, and that surgery was not always the right answer for this type of condition. He reiterated to Mr. Kostyo that even after surgery, patients still have pain and loss of movement. He was told that the medical department would continue to monitor his condition. Mr. Kostyo complained that a motion factor made the MRI difficult to read.[2] Mr. Bunts scheduled a second MRI.

A new clinical director, Dr. Siha, was hired at FCI Elkton in June 2008. Mr. Kostyo met with Dr. Siha on June 11, 2008. Dr. Siha prescribed range of motion exercises and a steroid.

---

[2] A motion factor is a movement during the imaging process that blurs the image or otherwise renders it difficult to read. The movement can be caused by arterial pulsations, swallowing, breathing, peristalsis, or physical movement of a patient. See www.mritutor.org.

He indicated he would resubmit the request for surgery after a second MRI was taken and a consultation with Dr. Jurenovich was scheduled. The second MRI revealed a tear in a tendon. Mr. Kostyo had a second appointment with Dr. Siha on January 6, 2009, during which Dr. Siha agreed to submit a request to the URC for surgery. This request was approved.

The surgery took place on April 9, 2009. Dr. Jurenovich reported he discovered a large spur on the acromial portion of Mr. Kostyo's shoulder blade that was impinging on muscles and tendons. The bone spur was removed and his rotator cuff was repaired. Upon his release from the hospital, Mr. Kostyo was transferred to the Federal Medical Correctional Center in Devens Massachusetts for physical therapy.

The surgery and the physical therapy have not completely corrected the problems Mr. Kostyo experienced with his shoulder. He contends he still suffers from pain and limited range of motion. He states there is now a grinding sensation in his shoulder when he moves his arm. While physical therapy has produced small improvements, his shoulder is stiff and not moving in the manner it should move. He claims that if he had received the surgery at an earlier date, his injuries would not have been as extensive and he would have experienced better results. He asserts that the defendants violated his Eighth Amendment rights.

Mr. Kostyo also mentions that he filed a Federal Tort Claim with the BOP. He submitted the claim to the Northeast Regional Office of the BOP on December 11, 2007. His claim was denied on June 10, 2008.

**Analysis**

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is

required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[3] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, Mr. Kostyo's claims under the Federal Tort Claims Act, and his Bivens claims against Dr. Manetti and Warden J.T. Shartle are dismissed pursuant to §1915(e).

*Federal Tort Claims Act*

The Federal Tort Claims Act provides the exclusive jurisdictional basis for tort claims against the United States. Before a party may bring such an action, however, the claim first must be submitted to the proper federal agency. 28 U.S.C. § 2675(a). The statute of limitations for these actions requires that the claim be filed "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). The administrative prerequisites of § 2675 are met if the claimant gives the agency written notice of his claim that is sufficient to enable the agency to investigate and places a value on his claim. Douglas v. United States, 658 F.2d 445, 447 (6th Cir. 1981).

Mr. Kostyo did not file this claim within the applicable statute of limitations period. The claim was denied by the BOP on June 10, 2008. This action was filed 16 months later, on

---

[3] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

October 26, 2009, well beyond the six month statute of limitations. Consequently, he cannot proceed with this claim.

*Bivens Claims*

Furthermore, there are no allegations asserted against Dr. Manetti or J.T. Shartle in the complaint. Plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. <u>Rizzo v. Goode</u>, 423 U.S. 362, 371 (1976); <u>Mullins v. Hainesworth</u>, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). The pleading standard in Rule 8 does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusations. <u>Id.</u> Plain assertions devoid of factual enhancement will not suffice to state a claim. <u>Id.</u> Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it fails to meet the basic pleading standards to sustain a claim for relief. The complaint simply contains no facts which reasonably associate the BOP Regional Medical Director, Dr. Manetti, and FCI Elkton Warden J.T. Shartle to any of the claims set forth by plaintiff.

**Conclusion**

Accordingly, Mr. Kostyo's claims under the Federal Tort Claims Act and his Eighth Amendment claims against BOP Regional Medical Director, Dr. Manetti, and FCI Elkton Warden J.T. Shartle are dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28

U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4] This case shall proceed solely on plaintiff's Eighth Amendment claims against P. Harvey, M.D., R. Meece, J. Bunts, and Wayne Flatt. The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process and shall include a copy of this order in the documents to be served upon the defendants.

        IT IS SO ORDERED.


Dated: February 18, 2010                                 s/       James S. Gwin
                                                          JAMES S. GWIN
                                                          UNITED STATES DISTRICT JUDGE

---

[4] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.