UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOEL KOSTYO, ) | 1:09CV2509 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Mag. Judge Kenneth S. McHargh |
| ) | |
| DR. P. HARVEY, et al., ) | |
| ) | |
| Defendants ) | MEMORANDUM |
| ) | AND ORDER |

On May 11, 2010, the plaintiff Joel Kostyo ("Kostyo") filed amended complaint, which named as defendants Dr. Paul Harvey; J. Bunts; Rebecca Meece, MLP; and Wayne Flatt, MLP; all of whom are being sued in their individual capacities. (Doc. 15, at 1.) Although the amended complaint contains a lengthy factual preface, the complaint consists of a single count:

> Defendants Harvey, Flatt, Bunts, Meece, Manetti and Shartle's individual and/or combined failure(s) to reasonably respond to plaintiff's serious medical needs amounts to deliberate indifference and violates plaintiff's Eighth Amendment Rights under the United States Constitution.

(Doc. 15, ¶ 92.) Manetti and Shartle are not designated in the caption as defendants. However, they are named in the section identifying "Parties." See generally doc. 15, at ¶¶ 5, 9 (identifying Manetti and Shartle).

The court has already dismissed Dr. Manetti and Warden Shartle from this action, and ruled that the case "shall proceed solely on plaintiff's Eighth Amendment claims against P. Harvey, M.D., R. Meece, J. Bunts, and Wayne Flatt." (Doc. 4, at 6-7.)

The defendants have a Motion to Dismiss, or alternatively, Motion for Summary Judgment. (Doc. 17.) Kostyo has filed a memorandum in opposition (doc. 23, 24), and the movants have filed a reply (doc. 30).

Kostyo has also filed a second motion for the appointment of counsel, pointing out the inherent limitations arising from his incarceration. (Doc. 29.) The court has already denied his first motion for the appointment of counsel (doc. 6), and Kostyo's second motion is likewise DENIED.

## I. FACTUAL BACKGROUND

At the time of the events at issue here, Kostyo was an inmate at the Federal Correctional Institute (FCI) Elkton, Ohio. (Doc. 15, ¶ 3.) The amended complaint alleges that Dr. P. Harvey was the Clinical Director at FCI Elkton, responsible for oversight of the clinical care provided at the institution. Id. at ¶ 4.

The amended complaint also alleges that defendant J. Bunts is the Health Services Administrator at FCI Elkton, who plans, implements, and directs all aspects of the department's administration. Id. at ¶ 6. Defendant R. Meece was a Physician's Assistant (PA), also referred to as a Mid Level Practitioner (MLP), at

FCI Elkton, who served as a primary care provider for routine requests for evaluations or new complaints, ongoing management of recurring conditions, and emergencies, when clinically indicated.  Id. at ¶ 7.  Finally, defendant Wayne Flatt is also a PA at the Health Services department at FCI Elkton.  He was Kostyo's primary care provider.  Id. at ¶ 8.

The court has previously summarized the lengthy factual allegations of the case as follows:

> Mr. Kostyo was transferred to FCI Elkton on May 3, 2006.  He claims that there was no bed available for him at that time and he was temporarily housed in the Special Housing Unit ("SHU").  Soon after his arrival, he was being handcuffed by one of the officers.  He claims the handcuffs were designed for a smaller person.  To secure his hands, the officers hyper-extended his arms backwards.  Mr. Kostyo contends he heard a pop and felt significant pain in his left shoulder.
>
> Mr. Kostyo first reported to sick call for the shoulder pain on June 1, 2006.  He described the incident in the SHU and the resulting injury.  He was given exercises to do to strengthen his shoulder.  He continued to complain of shoulder pain in July and August 2006.  He was prescribed Motrin for the pain, and x-rays were ordered.  The x-rays showed no damage.  He sent a communication to Mr. Harvey, the FCI Elkton Clinical Director.  He indicated he was still in pain and the medication was not resolving the problem.  Mr. Harvey advised him to continue to perform the exercises.  Mr. Kostyo claims the exercises exacerbated the problem, and decided to discontinue that course of treatment.
>
> In March 2007, Mr. Kostyo returned to the medical department complaining of pain in his left shoulder.  The physician's assistant gave him an injection of Toradol and placed a request for an MRI with the Utilization Review Committee ("URC").  The URC denied the request and ordered that a second set of x-rays be taken of Mr. Kostyo's shoulder.  These x-rays were also negative.  The MRI was then performed in May 2007.  The MRI revealed an abnormal amount of fluid or swelling was present in the shoulder joint, a small amount

3

of fluid extended into the space between the shoulder blade and the tendon, and arthritis appeared in the shoulder joint where the scapula and the clavicle meet.  A small tear was suspected in the supraspinatus tendon.  Upon receiving a copy of the MRI results, Mr. Kostyo asked Mr. Harvey about his options for treatment.  Mr. Harvey told him Motrin was the only option available as the x-rays were negative.  He did not mention the MRI results.

Mr. Kostyo returned to the medical department in July 2007 and was seen by physician's assistant Flatt.  He indicates he was prescribed Proxicam in place of the Motrin.  Mr. Kostyo inquired about possible surgery on his shoulder.  He states Mr. Flatt replied that he had never seen rotator cuff surgery that achieved the result the patient expected.  He stated that surgery was not always the answer and that Mr. Kostyo should give the medication time to work.

Nevertheless, Mr. Kostyo received approval from the URC to consult with an orthopedic surgeon .  He met with Dr. Jurenovich on October 5, 2007.  He claims the surgeon told him he had a rotator cuff tear which he felt would require surgery.  The surgeon submitted several requests for approval of the procedure, but all requests were denied.  The URC indicated that surgery was not clinically indicated.

When the third request was denied in 2008, Health Services Administrator J. Bunts met with Mr. Kostyo.  He explained that the surgery requests were denied because the injury was not life threatening, and that surgery was not always the right answer for this type of condition.  He reiterated to Mr. Kostyo that even after surgery, patients still have pain and loss of movement.  He was told that the medical department would continue to monitor his condition.  Mr. Kostyo complained that a motion factor made the MRI difficult to read.  Mr. Bunts scheduled a second MRI.

A new clinical director, Dr. Siha, was hired at FCI Elkton in June 2008.  Mr. Kostyo met with Dr. Siha on June 11, 2008.  Dr. Siha prescribed range of motion exercises and a steroid.  He indicated he would resubmit the request for surgery after a second MRI was taken and a consultation with Dr. Jurenovich was scheduled.  The second MRI revealed a tear in a tendon.  Mr. Kostyo had a second appointment with Dr. Siha on January 6, 2009, during which Dr. Siha agreed to submit a request to the URC for surgery.  This request was approved.

> The surgery took place on April 9, 2009. Dr. Jurenovich reported he discovered a large spur on the acromial portion of Mr. Kostyo's shoulder blade that was impinging on muscles and tendons. The bone spur was removed and his rotator cuff was repaired. Upon his release from the hospital, Mr. Kostyo was transferred to the Federal Medical Correctional Center in Devens Massachusetts for physical therapy.
>
> The surgery and the physical therapy have not completely corrected the problems Mr. Kostyo experienced with his shoulder. He contends he still suffers from pain and limited range of motion. He states there is now a grinding sensation in his shoulder when he moves his arm. While physical therapy has produced small improvements, his shoulder is stiff and not moving in the manner it should move. He claims that if he had received the surgery at an earlier date, his injuries would not have been as extensive and he would have experienced better results. He asserts that the defendants violated his Eighth Amendment rights.

(Doc. 4, at 1-4.)

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Until recently, the standard for a motion to dismiss for failure to state a claim upon which relief can be granted was that the motion establish, beyond a reasonable doubt, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wright v. Metrohealth Med. Ctr., 58 F.3d 1130, 1138 (6th Cir. 1995), cert. denied, 516 U.S. 1158 (1996). However, in Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), the Supreme Court modified the standard, in particular the "no set of facts" phrase.

5

The Court's ruling in Twombly abrogated Conley, and moved away from the pure notice pleading standards that had previously been a hallmark of the Civil Rules. The Twombly Court asserted:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Twombly, 550 U.S. at 555 (citations omitted). See also Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009); Association of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007). The Court protested that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Compare 5 Wright & Miller, Federal Practice and Procedure, § 1216 (2004) ("Conspicuously absent from Federal Rule 8(a)(2) is the requirement found in the [earlier] codes that the pleader set forth the 'facts' constituting a 'cause of action'.") Justice Stevens, in dissent, characterized the decision as a "dramatic departure from settled procedural law." Twombly, 550 U.S. at 573 (Stevens, J, dissenting).

In Ashcroft v. Iqbal, the Court clarified that the new Twombly standard is not intended to be limited to complicated litigation, such as the antitrust conspiracy case in Twombly. Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). The Court asserted that the new pleading standards governing Rule 8(a) do not require "detailed factual

allegations," however they do require "factual enhancement." Iqbal, 129 S.Ct. at 1949. Only "a complaint that states a plausible claim for relief" will survive a motion to dismiss. Id. at 1950.

> The Court summarized its new "plausibility" standard as follows:
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. 554). See, e.g., Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (plausibility standard). In other words, when resolving a motion to dismiss, the court is now required to locate the allegations of the complaint on a possibility – plausibility – probability continuum. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The Supreme Court stated that "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Twombly, 550 U.S. at 563 n.8. The function of the court in ruling on such a motion is not to weigh the evidence, nor to appraise the credibility of witnesses. Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). Rather,

the court is simply to determine "whether a complaint states a plausible claim for relief." Iqbal, 129 S.Ct. at 1950.

A motion to dismiss for failure to state a claim upon which relief can be granted is procedural, and tests the sufficiency of the complaint. Miller, 50 F.3d at 377; State ex rel. Hanson v. Guernsey County Bd. of Comm'rs, 65 Ohio St.3d 545, 548, 605 N.E.2d 378, 381 (1992). The court must construe the complaint in the light most favorable to the plaintiff, and, for the purposes of this motion, accept all factual allegations as true. Central States Pension Fund v. Mahoning Nat'l Bank, 112 F.3d 252, 255 (6th Cir. 1997). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555).

### III. PHS IMMUNITY

The defendants argue that, since Dr. Harvey and Meece are both Public Health Service ("PHS") officers, they are entitled to absolute immunity from Bivens actions[1]. (Doc. 17, at 2-4; doc. 30, at 2-4.)

The allegations of the amended complaint do not establish that Dr. Harvey and Meece are PHS employees. See generally doc. 15. However, both have

---

[1] An implied cause of action for damages against federal employees alleged to have violated an individual's constitutional rights. See generally Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

8

attached declarations[2] to the motion to dismiss, averring that they are commissioned PHS officers, who were performing medical duties during the relevant time periods of the complaint. See doc. 17, DX A (Harvey decl.) and B (Meece decl.). Kostyo concedes that Dr. Harvey and Meece were PHS employees (although he contests their assertion of immunity). (Doc. 23, at 10.)

> The Supreme Court has stated that 42 U.S.C. § 233(a):
>
> . . . grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct. By its terms, § 233(a) limits recovery for such conduct to suits against the United States.

Hui v. Castaneda, 130 S.Ct. 1845, 1851 (2010). The Court in Castaneda ruled that "the text of § 233(a) plainly indicates that it precludes a Bivens action" against the PHS defendants for claims alleging deliberate indifference to the decedent's serious medical needs in violation of his Eighth Amendment rights. Castaneda, 130 S.Ct. at 1852.

The defendants note that the statute contains three factors relevant to its application. (Doc. 17, at 4.) First, the claim must be for personal injury resulting from the performance of medical functions. Id. (quoting 42 U.S.C. § 233(a)). Second, the defendant must have been an employee of the PHS. Id. Third, the

---

[2] Because this issue involves the jurisdiction of the court over Dr. Harvey and Meece, the court will consider these declarations without converting the motion to dismiss into a motion for summary judgment. See, e.g., Libbett v. Doody, 686 F.Supp.2d 271, 275 n.5 (W.D. N.Y. 2010); Dowdy v. Hercules, No. 07-CIV-2488, 2010 WL 169624, at *7 n.4 (E.D. N.Y. Jan. 15, 2010).

defendant must have been acting within the scope of his employment. Id. As noted by the defendants, the court finds that the allegations of the amended complaint establish all three of these factors, in favor of the assertion of immunity. (Doc. 17, at 4-6.)

Kostyo alleges that Dr. Harvey was responsible for the clinical care provided at FC I Elkton, that he evaluated Kostyo's medical condition, ordered X-rays, and provided him with medical options. (Doc. 15, Am.Compl., at ¶¶ 4, 32, 42-43.) Kostyo alleges that Dr. Harvey "provided grossly inadequate treatment," and denied him proper medical care. Id. at ¶ 15.

Dr. Harvey's declaration establishes that he was a duly commissioned officer of the PHS, employed by PHS at the relevant time period of the complaint, and that he was acting with the scope of his employment by providing medical care to Kostyo. (Doc. 17, DX A (Harvey decl.).)

As to Meece, Kostyo alleges that she was a "Mid Level Practitioner," who served as a primary care provider for routine requests for evaluations or new complaints, ongoing management of recurring conditions, and emergencies, when clinically indicated. (Doc. 15, Am.Compl., at ¶ 7.) Meece examined Kostyo, documented the incident which caused his shoulder injury, and prescribed shoulder exercises. Id. at ¶ 22. As with Dr. Harvey, Kostyo alleges that Meece "provided grossly inadequate treatment," and denied him proper medical care. Id. at ¶ 15.

Meece's declaration establishes that she was a duly commissioned officer of the PHS, employed by PHS at the relevant time period of the complaint, and that she was acting with the scope of her employment by providing medical care to Kostyo. (Doc. 17, DX B (Meece decl.).)

Kostyo contests the assertion of immunity by Dr. Harvey and Meece. He argues that, although they were PHS employees at the time that they treated him, "they were deliberately indifferent to his serious medical needs and therefore acting outside the scope of their employment." (Doc. 23, at 10-11.) Kostyo confuses the scope of employment with the performance of their job tasks. As discussed above, Dr. Harvey and Meese have established that providing medical treatment to Kostyo was within the scope of their employment. The Castaneda Court noted that "proof of scope is in most § 233(a) cases established by a declaration affirming that the defendant was a PHS official during the relevant time period." Castaneda, 130 S.Ct. at 1854.

Both Dr. Harvey and Meece are immune from suit, pursuant to the Public Health Service Act, 42 U.S.C. § 233(a), and the Bivens claims against them are dismissed with prejudice. See, e.g., Wise v. Lappin, No. 2:08-CV00138, 2010 WL 2773308, at *4 (E.D. Ark. June 25, 2010); Young v. Speziale, No. 2:07-03129, 2010 WL 2326541, at *2-*3 (D. N.J. June 7, 2010); Libbett, 686 F.Supp.2d at 275; Dowdy, 2010 WL 169624, at *7 (dismissing Bivens claims against PHS employees).

11

## III. EIGHTH AMENDMENT CLAIM

The Supreme Court has recognized a Bivens cause of action for damages against federal employees alleged to have violated an individual's rights under the Eighth Amendment. Carlson v. Green, 446 U.S. 14, 17-19 (1980); see generally Bivens, 403 U.S. 388.

The Supreme Court has found that "deliberate indifference" to the serious medical needs of a prisoner constitutes an unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Court made clear in Estelle that not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. Id. at 105. In order to state a cognizable claim, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.

A complaint that a medical provider has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Estelle, 429 U.S. at 106. See also Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995); King v. Overberg, 996 F.2d 1215, 1993 WL 216462, at *2 (6th Cir. 1993) (TABLE, text in WESTLAW). The Supreme Court has stated that ordinary medical malpractice claims are more properly brought in state court. Id. at 107.

Every plaintiff claiming deliberate indifference to his serious medical needs must clear two high hurdles. Dunigan ex rel. Nyman v. Winnebago County, 165 F.3d 587, 590 (7th Cir. 1999). See also Farmer v. Brennan, 511 U.S. 825, 834 (1994). A constitutional claim for deliberate indifference requires a showing of both objective and subjective components. Phillips v. Roane County, Tenn., 534 F.3d 531, 539 (6th Cir. 2008) (citing Farmer, 511 U.S. at 834).

The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. Farmer, 511 U.S. at 834; Phillips, 534 F.3d at 539. A medical need is sufficiently serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Lockett v. Suardini, 526 F.3d 866, 876 (6th Cir. 2008) (quoting Blackmore v. Kalamazoo County, 390 F.3d 890, 897 (6th Cir. 2004)).

A condition is serious if the failure to treat the prisoner's condition could result in further significant injury, or the unnecessary and wanton infliction of pain. Dunigan, 165 F.3d at 590-591. In order to state an Eighth Amendment claim based on an alleged delay in medical treatment, an inmate must allege medical evidence establishing the detrimental effect of the alleged delay. Wright v. Taylor, No. 03-5361, 2003 WL 22474614, at *1 (6th Cir. Oct. 29, 2003) (citing Napier v. Madison County, 238 F.3d 739, 742 (6th Cir. 2001)). See also Jarriett v. Wilson, No.

03-4196, 2005 WL 3839415, at *6 (6th Cir. July 7, 2005) (quoting Napier); Jennings v. Al-Dabagh, No. 03-2046, 2004 WL 957817, at *1 (6th Cir. Apr. 29, 2004);

As to the subjective component, "the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Lockett, 526 F.3d at 877 (quoting Farmer, 511 U.S. at 837); see also Phillips, 534 F.3d at 540.

"Deliberate indifference" describes "a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835; Molton v. City of Cleveland, 839 F.2d 240, 243 (6th Cir. 1988), cert. denied, 489 U.S. 1068 (1989). The Supreme Court has clarified the definition of "deliberate indifference" in this context by equating it with criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm. Sanderfer, 62 F.3d at 154 (citing Farmer). To act recklessly, the defendant must consciously disregard a substantial risk of serious harm. Farmer, 511 U.S. at 839.

"Deliberate indifference" does not include negligence in diagnosing a medical condition. Sanderfer, 62 F.3d at 154. See also Estelle, 429 U.S. at 106; King, 1993 WL 216462, at *2. Nor does a difference of opinion between the prisoner and prison medical staff about his medical treatment amount to deliberate indifference. King, 1993 WL 216462, at *2; McDonald-El v. Anthony, 996 F.2d 1215, 1993 WL 210683, at *2 (6th Cir. 1993) (TABLE, text in WESTLAW).

14

Kostyo alleges that he was suffering from severe shoulder pain, and related complaints. There were two problems (perhaps related, see doc. 15, at ¶¶ 86, 89) which were diagnosed concerning his shoulder: 1) a mild rotator cuff tear, and 2) adhesive capsulitis. See, e.g., doc. 15, at ¶ 68; doc. 23, at 6. Severe shoulder pain, including a possible rotator cuff tear, may qualify as a serious medical need. Thomas v. Neves, No. 2:07CV01249, 2010 WL 1644789, at *3 (E.D. Cal. Apr. 21, 2010); Flemming v. City of New York, No. 03-CV-0662, 2009 WL 3174060, at *8 (E.D. N.Y. Sept. 30, 2009).

Kostyo repeatedly sought shoulder surgery, but Bunts and the medical staff resisted approval of surgery, even when it had been recommended by one of their doctors. See, e.g., doc. 15, at ¶¶ 61, 65; doc. 23, at 6. Among other things, Kostyo was repeatedly advised by Flatt, Bunts, and others, that surgery would not necessarily bring him the relief from pain that he desired. See doc. 15, at ¶¶ 46, 65. Kostyo eventually underwent shoulder surgery. In fact, as predicted, the surgery did not provide the relief he sought, as Kostyo alleges that he continues to suffer post-surgery shoulder discomfort. (Doc. 15, at ¶¶ 81, 90.)

Kostyo's amended complaint is essentially one of medical malpractice. It is clear from allegations of the amended complaint that Kostyo did receive treatment for his medical conditions. The treatment initially consisted of a regimen of stretching exercises combined with pain medication, and progressed to surgery followed by physical therapy. A difference of opinion between Kostyo and his

15

medical providers regarding the type of medical treatment necessary is insufficient to state a claim under the Eighth Amendment. Matthews v. Fleming, No. 3:05CV1408, 2010 WL 669447, at *4 (N.D. Tex. Feb. 25, 2010); King, 1993 WL 216462, at *1-*2 (citing Estelle, 429 U.S. at 107; Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Jennings, 2004 WL 957817, at *1 (quoting Westlake, 537 F.2d at 860 n.5). There are no allegations here that the defendants deliberately ignored Kostyo's medical needs with the intent to inflict pain or prolong any suffering. See, e.g., Jennings, 2004 WL 957817, at *2. Kostyo's personal opinion that his care was substandard, or that he was not given the surgical treatment he requested, at the time he requested it, raises state-law claims of medical malpractice, not an Eighth Amendment violation concerning his serious medical needs. Jennings, 2004 WL 957817, at *2 (citing Westlake, 537 F.2d at 860-61.)

As to the adhesive capsulitis, Kostyo was repeatedly advised to carry out a regimen of range of motion exercises, along with pain medication. See, e.g., doc. 15, at ¶¶ 22, 28, 68. However, because the exercises were painful, Kostyo "decided to give his shoulder the Fall of 2006 and Winter of 2007, to rest and repair." Id. at ¶

29. After the surgery, Kostyo was treated by a physical therapist, involving range of motion exercises, which continue to be painful. Id. at ¶¶ 83-89.

The treatment which Kostyo was prescribed for his adhesive capsulitis was the standard treatment. See, e.g., Longworth v. Commissioner, Soc. Sec. Admin., 402 F.3d 591, 593 (6th Cir. 2005) (working on range of motion is best treatment); Whitson v. Astrue, No. 1:08CV292, 2010 WL 711823, at *5 n.1 (E.D. Tenn. Feb. 23, 2010) (treatment involves stretching exercises). Kostyo concedes that he was not compliant in following the exercise regimen provided for him. The allegations of the amended complaint do not state a plausible claim for relief based on a theory of deliberate indifference concerning his condition of adhesive capsulitis.

The amended complaint fails to allege facts that, if proven, would rise to the level of the serious deprivation and deliberate indifference required to support an Eighth Amendment claim. See Estelle, 429 U.S. at 106; Carter v. Vandercook, No. 02-5701, 2003 WL 248074, at *1 (6th Cir. Feb. 3, 2003), cert. denied, 541 U.S. 941 (2004). The amended complaint, at most, alleges negligence and Kostyo's disagreement with the medical treatment that he received during his incarceration, which are insufficient to state an Eighth Amendment claim. Carter, 2003 WL 248074, at *1 (citing Estelle, 429 U.S. at 106.) To the extent that Kostyo asserts an Eighth Amendment claim based upon an alleged delay in medical treatment, his claim fails as he did not allege medical evidence of the detrimental effect of the delay. Wright, 2003 WL 22474614, at *1 (citing Napier); Carter, 2003 WL 248074,

17

at *1. The court finds that the amended complaint does not state "a plausible claim for relief." Iqbal, 129 S.Ct. at 1950.

## IV. SUMMARY

The second motion for the appointment of counsel (doc. 29) is DENIED.

The motion to dismiss (doc. 17) is GRANTED. Both Dr. Harvey and Meece are immune from suit, pursuant to 42 U.S.C. § 233(a), and the Bivens claims against them are dismissed with prejudice. As to the remaining defendants, the court finds that the amended complaint does not state "a plausible claim for relief" that the defendants were deliberately indifferent to Kostyo's serious medical needs in violation of the Eighth Amendment.

IT IS SO ORDERED.

Dated:   Sept. 8, 2010                        /s/ Kenneth S. McHargh
                                                           Kenneth S. McHargh
                                                           United States Magistrate Judge